UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| vs. | § | CRIMINAL NO.: 7:18-CR-1691 |
| | § | |
| CHRISTOPHER ANDRADE | § | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the United States of America, hereinafter referred to as "the Government," by and through its Attorney and Assistant United States Attorney assigned to this matter, and would respectfully show the Court the following: The Defendant's Motion to Suppress and related Motion For Leave To File Defendant's Motion to Suppress should be DENIED as untimely.

**APPLICABLE FACTS**

Defendant Christopher Andrade was indicted on January 3, 2019 as part of a Superseding Indictment (Docket # 34) alleging a violation of Title 18 U.S.C. 1958(a) and 2, and was subsequently brought before Magistrate Judge Juan F. Alanis on March 14, 2019 for Initial Appearance. Defense Counsel Rafael De La Garza was appointed on March 14, 2019 (Docket #59). On March 19, 2019, the Court released a Scheduling Order indicating that the Motion Filing deadline was April 2, 2019 (Docket #66). Defendant subsequently filed a Motion for Continuance on May 1, 2019 which was granted (Dockets ## 84 -87). At Final Pretrial Conference on July 1, 2019, the Defendant answered Ready for trial and indicated to the Court that the Defendant was opposed to any motion for continuance. A Motion for Severance was granted on July 16, 2019, and the Court indicated the deadline for any further pretrial motions to be filed was July 18, 2019. A new superseding indictment was handed down from the grand jury on December 4, 2019

(Docket #144), and the Court noted at arraignment that the previous scheduling dates remained in effect. At final pretrial conference on January 6, 2020, the Defendant was not medically cleared and not present in the Court. On the final pretrial date of February 5, 2020, the Defendant answered ready for trial. On the final pretrial date of March 4, 2020, the Defendant answered ready for trial. On the final pretrial date of March 9, 2020, the Defendant answered ready for trial. On the final pretrial date of May 4, 2020, the Defendant opposed any continuance of trial. On the final pretrial date of January 4, 2021, the Defendant answered ready for trial. On the final pretrial date of February 1, 2021, the Defendant answered ready for trial. On the final pretrial date of August 2, 2021, the Defendant answered ready for trial. On the final pretrial date of December 6, 2021, the Defendant opposed any further continuance. On the final pretrial date of February 7, 2022, the Defendant answered ready for trial. On the final pretrial date of August 1, 2022, the Defendant opposed any further continuance. On the final pretrial conference date of November 7, 2022, the Defendant answered ready for trial. The Defendant is scheduled for Jury Selection tomorrow, on June 27, 2023, before this Court. The Defendant filed Defendant's Motion to Suppress, and accompanying Motion For Leave to File Defendant' Motion to Suppress on June 25, 2023, alleging violations of Defendant's constitutional rights.

## APPLICABLE LAW

A motion to suppress that is filed after the deadline for pretrial motions, while untimely, may be considered by the District Court if the party shows good cause.[1] Federal Rule of Criminal Procedure 12(c) states:

> **(c) Deadline for a Pretrial Motion; Consequences of Not Making a Timely Motion.**
>
> **(1) Setting the Deadline**. The court may, at the arraignment or as soon afterward as practicable, set a deadline for the parties to make pretrial motions

---

[1] *See* Fed.R.Crim.P. 12(c)(3); *U.S. v. Williams*, 774 Fed.Appx. 871, 876 (5th Cir. 2019).

and may also schedule a motion hearing. If the court does not set one, the deadline is the start of trial.
**(2) Extending or Resetting the Deadline.** At any time before trial, the court may extend or reset the deadline for pretrial motions.
**(3) Consequences of Not Making a Timely Motion Under Rule 12(b)(3).** If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely. But a court may consider the defense, objection, or request if the party shows good cause.[2]

It is within the trial judge's discretion to deny a motion as untimely.[3] While the Fifth Circuit recognizes it has not ruled on the precise standard of review of a district court's finding of lack of good cause under 12(b)(3), it has required a showing of good cause to include a showing of cause and prejudice.[4] Changing attorneys several times prior to pretrial motion deadline is not considered good cause where prior defense counsel is aware of the discovery moving to be suppressed.[5] Ongoing plea negotiations are not considered good cause, as negotiations do not prevent the filing of motions.[6] For the purposes of a showing of prejudice, a Defendant must show a forfeited error clear or obvious affecting a substantial right.[7] This in practice is a demonstration that the denial "affected the outcome of the district court proceedings."[8]

## DISCUSSION

In the instant case, over four years have elapsed since the Defendant was initially indicted by a federal grand jury. During that time, the Defendant answered ready for trial on several occasions, and indicated opposition to any further continuances. There is no indication from the

---

[2] Fed. R. Crim. P. 12(c)(3).
[3] *See Williams*, 774 Fed.Appx. 871.
[4] *See U.S. v. Dennis*, 41 F.4th 732 (5th Cir. 2022)(citing *Williams*, at 876-77).
[5] *See Dennis*, at 740.
[6] *See Dennis*, at 740.
[7] *Puckett v. U.S.*, 556 U.S. 129 (2009).
[8] *Id. at 135.*

docket of any extension or resetting of the previously scheduled dates from the Court as to pretrial motions. The Government contends it can be concluded from Defendant's readiness for trial in several instances over the course of multiple years that discovery had been reviewed, and no applicable motions were implicated. There has been no change in Defendant's counsel from onset of the case against the Defendant. The Defendant was aware of, or should have been aware, that other co-defendants filed similar pretrial motions.[9] No good cause exists in this instance for the untimely motion.

The Defendant is unable to demonstrate prejudice. The Government maintains it would succeed on the filed Motion. The case law that Defendant utilizes to support his argument in favor of suppression does not pass muster, as the facts contained therein are entirely distinguished from the instant case.[10] Each circumstance cited to by the Defendant pertains to an occasion where a defendant is not afforded his *Miranda* warnings, wherein the Defendant here was provided his warnings. The Eighth Circuit in *Ollie* specifically states:

> "the matter at issue here is whether Mr. Ollie was in custody and therefore entitled to *Miranda* warnings, **not whether his statements were compelled**. The ultimate question is therefore not whether a reasonable person would fear that he could be punished unless he spoke, but whether he could be punished for ending the interview without the permission of the police or his parole officer. If such a fear is a reasonable one, the existence of such fear on the part of the parolee **would contribute to a finding of custody**."[11]

The *Ollie* decision further discusses a scenario where a Defendant is subjected to pre-*Miranda* questioning before a subsequent post-*Miranda* interview and cites Supreme Court jurisprudence.

---

[9] *See Williams*, 774 Fed.Appx. at 877.
[10] *See generally U.S. v. Ollie*, 442 F.3d 1135, 1139 (8th Cir. 2006); *U.S. v. Hernandez*, 200 Fed.Appx. 283, 286 (5th Cir. 2006); *U.S. v. Taing*, 2022 WL 3131809 (5th Cir. 2022).
[11] *U.S. v. Ollie*, 442 F.3d 1135 (2006) (emphasis added).

Where such a circumstance is implicated, the *Elstad* and *Seibert* principles apply.[12] The Government does not dispute the Defendant was in custody. The Government is able to demonstrate to this Court that the Defendant was afforded his constitutional *Miranda* warnings prior to custodial interview. The two Fifth Circuit cases cited to by Defendant as propping up *Ollie* as authority for this Court that an interview is coercive due to parole officer involvement also fall short. *Hernandez* simply stands for the proposition that Courts determining the admissibility of a *post-Miranda* statement following a *pre-Miranda* statement must assess which standard applies.[13] Likewise with *Taing*.[14]

The fact that Defendant's parole officer was a part of the interview is not prima facie coercion. During the interview, the parole officer requested access to the Defendant's phone. Courts have routinely acknowledged that individuals on parole are set apart from everyday law-abiding citizens.[15] Warrantless non-consensual searches of probationer's homes, property, and

---

[12] *Oregon v. Elstad*, 470 U.S. 298 (1985)(absent deliberately coercive or improper tactics in obtaining an initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion); *Missouri v. Seibert*, 542 U.S. 600 (2004)(if a deliberate two-step interview strategy has been employed to circumvent *Miranda* protections, post-*Miranda* statements related to the substance of a pre-*Miranda* statement must be excluded unless curative measures are taken before the statement is made).

[13] *U.S. v. Hernandez*, 200 Fed.Appx. 283 (5th Cir. 2006)(holding that pre-*Miranda* statements should be reviewed under the *Elstad* standard *unless* the withholding of advisement of rights was a deliberate strategy on the art of law enforcement officials which would implicate *Seibert*).

[14] *U.S. v. Taing*, 2022 WL 3131809 (5th Cir. 2022)(holding that *if* a two-step strategy to circumvent *Miranda* was employed, *then* the court should evaluate whether appropriate curative measures were taken).

[15] *See U.S. v. Knights*, 543 U.S. 112 (2001)(holding warrantless searches of probationers were necessary to promote legitimate government interests because "the very assumption of the institution of probation is that the probationer is more likely than the ordinary citizen to violate the law")(quoting *Griffin v. Wisconsin*, 483 U.S. 868, 880)(1987); *see also U.S. v. Keith*, 375 F.3d 346 (5th Cir. 2004)(noting the core reasoning of *Knights* rested upon an explanation of why the needs of the probation system outweigh the privacy rights of the probationers generally, who inherently "do not enjoy the absolute liberty to which every citizen is entitled.").

vehicles have all routinely been upheld as promoting the governmental function of probation.[16] This has been found to be the case even in circumstances where there is no express condition of parole or state regulation requiring compliance with parole officer commands.[17] The Fifth Circuit has additionally found that even threatening to prosecute a parolee's ill family-member does not even rise to the level of coercion.[18] In this instance, the Defendant was afforded his *Miranda* warnings from the onset of interview, and thereby there is no implication of either *Seibert* or *Elstad* principles as noted by *Ollie*.

## CONCLUSION

The Government requests that the Court strike the Defendant's Motion to Suppress and accompanying Motion For Leave to File Defendant's Motion to Suppress as untimely or, in the alternative, be DENIED as a matter of law.

Respectfully submitted,

ALAMDAR S. HAMDANI
UNITED STATES ATTORNEY

*/s/ Peter I. Brostowin*
Peter I. Brostowin
Assistant United States Attorney

---

[16] *See Knights*, 534 U.S. 112; *Griffin*, 483 U.S. 868.
[17] *U.S. v. Keith*, 375 F.3d 346 (5th Cir. 2004)(upholding a warrantless non-consensual search of a probationer's home based on reasonable suspicion when neither the state promulgated a regulation nor a condition of probation specifically authorized such a search).
[18] *U.S. v. Harrison*, 461 F.2d 1127 (5th Cir. 1972) (holding a Defendant arrested on a parole violation warrant was not coerced into providing a statement during interview with FBI Agents when faced with personal investigation and prosecution of family members).

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Government's Response to Defendant' Motion to Suppress was on this 26th day of June 2023 filed via ECF and served on Rafael De La Garza, attorney for the Defendant.

*/s/ Peter I. Brostowin*
Peter I. Brostowin
Assistant United States Attorney
